LEOTA STUTSMAN, Appellee, v. DES MOINES CITY RAILWAY COMPANY, Appellant.

APPEAL AND ERROR: Harmless Error—Improper Questions—Innocuous Answer. An improper question followed by an innocuous answer works a harmless error. So held where a physician was asked whether an injured party had told him anything about having been injured, and answered that all the injured party said was as to the time and place of the injury.

WITNESSES: Impeachment—Collateral and Immaterial Matters. Witnesses may not be impeached on collateral and immaterial matters. So held in an action for personal injury, wherein it was sought to show that the injured party had stated that her husband was drunk at the time of the injury, there being no substantive evidence that the husband was drunk.

DAMAGES: Evidence—Personal Injury—Abnormal Childbirth. An injured party may show that, following an accident to her, the birth of her child was attended with far greater suffering than that attending all her previous confinements, and, by other testimony, that such added suffering was caused by the accident in question.

TRIAL: Reception of Evidence—Objections—Sufficiency. Principle recognized that a general objection to testimony is properly overruled when the testimony is competent for any purpose.

TRIAL: Reception of Evidence—Right to Object—Waiver and Estoppel. Permitting testimony of an alleged fact to be given by one or more witnesses, *without objection of any kind*, works an estoppel to insist that proof by other competent witnesses to the same fact is immaterial or incompetent.

WITNESSES: Cross-Examination—Nonrelevant Matters. Cross-examination should be confined to matters relevant to the mat-

ters brought out on direct. Evidence reviewed, and *held*, certain matters were properly excluded as not proper on cross-examination.

EVIDENCE: Opinion Evidence—Results Flowing from Assumed Facts—Form of Question. Opinions as to results need not go beyond a statement of the *probable* results. Like results from other causes need not be negatived. The latter is properly left to cross-examination.

TRIAL: Instructions—Form, etc.—Argumentative Instructions. Argumentative instructions are properly refused. So held as to an instruction on the effect of testimony relative to the prior immorality of an injured party.

DAMAGES: Injuries to Person—Permanent and Continuing Injuries Contrasted—Instructions. An instruction that, if the jury finds that plaintiff's injuries are reasonably certain to *continue* in the future, she would be entitled to recover therefor, is not a submission of the question of *permanent* injuries.

TRIAL: Instructions—Applicability to Pleadings and Evidence. Instructions not applicable to the pleadings and evidence are properly refused. So held as to one directing the jury to allow nothing for a possible future surgical operation, neither the pleadings claiming nor the evidence showing any claim in relation thereto.

TRIAL: Verdict—$2,500—Excessiveness. Verdict for $2,500 sustained. Plaintiff suffered a severe injury to her genito-urinary organs, which resulted in the premature birth of a child, and the probable future necessity for a surgical operation.

*Appeal from Polk District Court.*—WM. H. McHENRY, Judge.

SATURDAY, JUNE 23, 1917.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Cummins, Hume & Bradshaw,* for appellant.

*Roy E. Cubbage,* for appellee.

WEAVER, J.—The plaintiff alleges that, on September 19, 1914, she was being carried as a passenger on one of defendant's street cars, which stopped at the corner of East Thirtieth and Walnut Streets for her to alight, and that, as she was in the act of leaving the car, and in the exercise of due care on her part, the car was started without any warning or signal thereof to her, jerking and dragging her to a considerable distance, and bruising and wrenching her person and causing her great pain and serious bodily injury. She further alleges that she was at the time in an advanced state of pregnancy, and that, by reason of the injuries occasioned as above stated, her child was prematurely born, and she was thereby made to suffer unusual and excruciating pain.

The defendant denies the petition generally. On trial to a jury, there was verdict and judgment in favor of plaintiff for $2,500.

I. Dr. Lambert, one of the physicians called by the plaintiff after her alleged injury, being examined as a witness on the part of plaintiff, was asked, "Did she relate anything to you at that time about having been injured in a street-car mix-up?" To this the defendant objected, as calling for hearsay, self-serving and irrelevant declarations. The court ruled that the testimony called for was not admissible as substantive evidence of the truth of her statements to the physician, but could properly be shown as being the basis or part of the basis on which the witness based his professional opinion. Whether, as an abstract proposition, this ruling was right or wrong, we think it was in no manner prejudicial to the defendant. The answer of the witness went no further than to state that plaintiff told him she injured her back in getting off a street car, but he did not remember whether she said she slipped or fell, or whether she said the car started up. In other words,

1. APPEAL AND ERROR: harmless error: improper questions: innocuous answer.

so far as the witness was able to say, she told him no more
than the time and place of her alleged injury, and he is un-
able to state whether she said anything concerning the cause
or manner of it.   The innocuous character of the evidence
in this respect is too evident to require argument, and the
assignment of error thereon is not well laid.

Other exceptions to rulings on evidence

2. WITNESSES:
impeachment:
collateral and
immaterial
matters.

are as follows: Plaintiff, as a witness in her
own behalf, testified that, on the evening in
question, she with her husband took pas-
sage on one of defendant's cars from West Des Moines to
their home in East Des Moines; that, as the car approached
the corner of East Thirtieth and Walnut Streets, she sig-
nalled for a stop; that the car did stop, and that she, fol-
lowing other passengers, undertook to alight; that, as she
was in the act of leaving the car, holding on to the rail
by her right hand, the car started, jerking her around,
twisting her back and shoulders, and making her so sick
she could hardly get home.   She further testified that, the
car having stopped a second time, she loosed her hold on
it, and staggered around until her husband caught her
and led her to the sidewalk.   On cross-examination, she
was asked, in substance, if she had not told a Mrs. Thomp-
son that her husband was drunk on that occasion, and that
she had been of more assistance to him than he could be
to her.   She denied having made such statement.   There-
after, plaintiff's husband testified in her behalf concern-
ing the alleged injury received by her, and as to his catch-
ing and assisting her, substantially as she had related the
incident to the jury.   His direct examination was closed
as follows:

"Q.   Now, Mr. Stutsman, there is one question I want
to ask you, because you will understand why, whether or
not you were drunk as you came home that night, as has
been insinuated in some of the questions that were asked

you? (Objected to by defendant as incompetent, irrelevant and immaterial. Question not answered.) Q. I will ask you this question, Mr. Stutsman, were you, when you came home that night, in condition so that you could observe and remember what happened on that trip? (Same objection by defendant. Overruled. Defendant excepts.) A. I was in as good condition as I ever was."

Later on, Mrs. Thompson, a neighbor of the plaintiff's, testifying for the defendant, said that, on the evening when plaintiff claims to have been hurt, and while in her own home, she heard plaintiff and her husband pass, and thought she detected something unusual in the husband's voice, and that, during the following week, she asked plaintiff what was the matter. Counsel then asked, "What did she say about Mr. Stutsman's condition?" and plaintiff's objection to the materiality of the inquiry was sustained. Thereupon, defendant made the following offer:

"Mr. Clark: The defendant, as bearing on the testimony of plaintiff and her husband in regard to Mr. Stutsman's assisting his wife home, offers to show by the witness that Mrs. Stutsman thereafter told the witness in substance that she brought Mr. Stutsman home rather than he assisted her, and in substance that Mr. Stutsman was under the influence of liquor to the extent that he was of no assistance, and that she had to follow him up and bring him out of several places at Des Moines in the city, the understanding she conveyed being that they were places where he was drinking."

Objection to this offer was also sustained. Of these several rulings, the defendant complains. We confess to surprise that counsel should gravely argue the soundness of these exceptions. Proof that Stutsman was intoxicated to an extent to prevent him from rendering the simple assistance to which his wife had testified, or to see or to know what had occurred at that time, might possibly have

been pertinent and proper testimony, but no witness testified to such condition on his part, or to any fact or circumstance tending in that direction. Defendant offered no evidence of that character. Its counsel did not even ask the wife whether her husband was drunk, but contented themselves with asking her if she did not say something of that nature to a third person. It is probably true that plaintiff was under no necessity to offer evidence of Stutsman's condition of sobriety, because it had not been impeached or attacked by any competent testimony; but the party who, by hint or indirection, seeks to leave an injurious impression upon the mind of the jury concerning his adversary, is not prejudiced if the suggested fact be denied. So far as this particular phase of the evidence is concerned, if Stutsman was drunk, surely, defendant's servants in charge of the car, or his fellow passengers leaving the car at the same stop, should be able to speak of it from direct personal knowledge; but no such evidence was offered, nor any reason suggested for failure to produce it. The only manner in which the husband's name was brought into the story of the alleged injury was by the wife's statement that, as she staggered away from her grasp on the car, her husband caught and led her to the sidewalk—an act by no means impossible and by no means inconsistent with a considerable degree of intoxication. The statement of the wife which counsel sought to show was no part of the *res gestae,* nor did it have the slightest tendency to show that the alleged accident and injury to her did not occur precisely as she testified on the trial. Neither did it conform to the rules governing impeaching testimony.

3. DAMAGES: evidence: personal injury: abnormal childbirth.
Another assignment of error is presented in connection with the testimony of plaintiff and her husband. The wife first testified, and offered other testimony in corroboration, that she was pregnant at the

time of the alleged injury, and that, from the time of such injury, she experienced great pain and suffering, which, in the course of about two months, culminated in the premature birth of her child. She further testified, without objection made or exception taken, that she had gone through seven or more previous confinements; that the pain and suffering accompanying this last premature confinement were unlike those she had suffered on former occasions. On cross-examination, defendant's counsel led her into a specific recitation of the circumstances of her prior confinements, and of the difficulties experienced and injuries resulting therefrom, and of the time it ordinarily required for her to recover her usual health. Later, when her husband was on the witness stand, he was asked, and, over defendant's objection, was permitted to answer, that, in her former confinements, she would ordinarily go into labor in the evening and the child be born some time in the morning, and added, "She was never in childbirth labor four days, like she was at this time, in her previous confinements." He also testified that, on other occasions, she would be able to get up and assist in her work in a few days, but this time it was six weeks before she had so far recovered. It is argued for the defendant that this testimony was incompetent, immaterial and irrelevant, and that the "apparent deduction was not warranted." There are two sufficient reasons for sustaining the court's ruling. In the first place, there appears to be no sound reason for holding the testimony inadmissible. In itself, it does not, of course, have any tendency to prove that plaintiff was injured by the negligence of the defendant, or that the premature birth of her child and attendant suffering were caused by her alleged injury in alighting from the car. But plaintiff was clearly entitled to show, as one of the elements of her right to recover, the fact that her confinement was in truth abnormal or untimely, and that she

was thereby caused to undergo suffering and sickness which would not have resulted to her from a normal delivery. This being established, it would still be incumbent upon her to show by other evidence that such untimely confinement was the result of her alleged injury. For the restricted purpose above indicated,—the showing of the abnormal character of the delivery,—we think it was entirely proper to show the fact that she had before been frequently confined, and knew the nature and character of a normal delivery and the experiences attendant thereon, and that her experiences in this last confinement were not such as characterized childbirth in due course of nature. There is a clear distinction between the case thus presented and *Etzkorn v. City of Oelwein,* 142 Iowa 107, 110. There, the testimony was met with timely objection, and the ground upon which its admission was held erroneous was not that the testimony was incompetent for any purpose, but that, as there stated:

"Counsel, in offering this testimony, was not trying to prove her physical condition prior to the birth of her last child. His effort undoubtedly was to have the jury believe that, as she had not previously suffered from childbirth, her suffering which she described as accompanying the birth of her last child *must have been due to the accident upon the walk.*"

4. TRIAL: reception of evidence: objections: sufficiency.

For such purpose, as we have already said, the evidence could not properly be considered. But the general denial of the defendant in this case put in issue not only the matter of plaintiff's injury, but also the alleged premature character of her confinement, and upon this issue, we think the testimony of the husband and wife had material bearing. If the testimony was competent and material for any purpose, however restricted such purpose may have been, then there was no error in overruling a gen-

eral objection thereto; and this is especially true where there is no request for an instruction to the jury limiting its effect.

Another feature of this record necessitates the same conclusion. This testimony was first offered when the wife was on the witness stand, and was given by her without objection or exception preserved thereto, nor was it made the subject of a motion to strike. Later, when the husband came to testify, and his attention was directed to the same subject-matter, defendant objected thereto, the objection being to the quality of the evidence, and not to the competency of the witness. For the reason stated, if for no other, there was no error in overruling this objection. Where objection has once been made in a proper and timely way, it is ordinarily held that the party against whom the ruling is made does not waive the error by failing thereafter to repeat the objection every time other testimony of the same character is offered. But to hold that a party may permit testimony of an alleged fact to be given by one or more witnesses without objection, and then insist that proof by another competent witness is immaterial or incompetent, would be quite unreasonable. One party to a suit should not be permitted to dictate his adversary's selection of witnesses by saying in effect, "You may prove the fact by A, but I will not allow you to corroborate him by B." Such course would be manifest trifling with the court.

5. TRIAL: reception of evidence: right to object: waiver and estoppel.

In cross-examination, Dr. Roberts, a witness for the plaintiff, was asked the following question:

6. WITNESSES: cross-examination: non-relevant matters.

"The prolonged labor in confinement was caused in its most obvious explanation by the bursting of the sacs, and it therefore being a dry birth, was it not, Doctor?"

The answer was ruled out, upon plaintiff's objection that the inquiry was not proper cross-examination. This, counsel complains, was a "harsh exercise" of the trial court's discretion. The objection is not well founded. The witness did not attend plaintiff in her confinement, and we find nothing in the record making this inquiry clearly relevant to anything he had said on direct examination. The witness had examined the plaintiff after her confinement and before the trial, and testified to the conditions he then discovered indicating a diseased or unnatural state of the parts. He also said, in substance, that a wrench or jerk of the body of a pregnant woman would be likely to cause what is known as a dry birth, and that a dry birth would make the labor pains long and severe. The subject of the "bursting of the sacs" was not mentioned by him. Again, the question asked, when reduced to its briefest terms, is whether the fact of a dry birth is not an explanation of the prolonged and severe character of the labor pains, and this is precisely what the witness had already said, and the defendant sustained no prejudice from the exclusion of its repetition.

Again, exceptions are taken to the form

7. EVIDENCE: opin- of the inquiry by plaintiff's counsel in ask-
ion evidence :
results flowing   ing for the judgment or opinion of her ex-
from assumed
facts: form of    pert witnesses. The point is that the ques-
question.

tions objected to call only for mere possible or conjectural results. Some of the questions were, no doubt, too broad and indefinite, but were met by objections and rulings resulting in such modifications of expressions as brought the testimony fairly within the rule confining the opinion given by the witness to the likely or probable results of the combination of circumstances assumed by the interrogator. But counsel for defendant, impliedly conceding this situation, contends that, even in this form, the testimony was still inadmissible, and that, to obviate the ob-

jection, the inquiry must be so framed, or the answer of the witness so expressed, as to "exclude other likely causes" than those to which the attention of the witness has been specifically called. No authority for this proposition is cited, nor do we think it justified by any recognized principle of the law of evidence. The limitations of human knowledge are such that no expert, however learned or experienced, can speak with absolute certainty of the cause and effect of all conditions affecting the health of any given individual. Experience and observation may fairly demonstrate that certain injuries or certain abnormal conditions are likely or may reasonably be expected to produce certain results, and of these the expert may speak. To qualify him to so speak, he is not required to negative the possibility of like results from other causes. Indeed, his expressed opinion that a result designated by him is likely or probable, while it does not exclude all other causes, implies that the result mentioned is the one most reasonably to be expected in cases of that character. If it be claimed by the opposing party that the witness' opinion is erroneous, or that its value is lessened by the existence of other possible causes productive of like results, that fact may either be developed upon cross-examination or established by the testimony of other witnesses. Counsel concede that there is authority in our precedents sustaining the competency in evidence of expert opinion as to likely results of given conditions, and we discover in this case no good reason to abandon or restrict the rule so established. *Vohs v. Shorthill,* 130 Iowa 538.

II. The defendant was permitted to

8. TRIAL: instructions: form, etc.: argumentative instructions.

introduce evidence tending to show that plaintiff's husband had at one time brought suit against a third person to recover damages for alienating the affections of his wife, and that, as a witness for her husband in that case, she had

admitted acts of adultery with such person. Presumably on the strength of this testimony, defendant requested the court to instruct the jury as follows:

"Instruction No. 1.   Ordinarily, evidence of facts showing evil conduct or moral degeneracy of a party or witness cannot be admitted on the trial of a case, unless such facts are relevant to the particular issues to be determined by the jury, nor can parties ordinarily be examined or required to make admissions of facts of such character, unless relevant to the issues of the case being tried.   One reason for this rule is that the court cannot undertake to try collateral matters or to determine their truth.   When, however, such evidence is introduced as having a legitimate bearing upon the issues on trial, the court cannot relieve the witness of the effect of admissions or evidence showing immorality or degeneracy as bearing on the moral character or credibility of the witness, nor can the court require the jury to separate such evidence from the general facts and circumstances out of which it is entitled to determine the weight and credit to be given to the testimony of the party or witness."

This request was refused, and the court instructed the jury that immoral conduct of plaintiff in the past constituted no defense to her claim for damages in this case if she had shown, by a preponderance of the testimony, the truth of her alleged injury by the negligence of the defendant, but that such testimony might be considered as bearing upon the question whether her physical condition, which she attributed to the alleged accident, was in fact the result thereof, or of her own immoral conduct.   The objection taken to the foregoing ruling and instruction is without merit.   Indeed, the record so made was clearly more favorable to the defendant than it was entitled to ask.   The occurrence affecting the moral character of the plaintiff took place 4 or 5 years before the alleged accident on which this action is based, and the story appears to have been dragged into the

record now, not as having any natural or fair relevance to
the issues being tried, but to effect, by indirection, an im-
peachment of plaintiff's moral character, and thereby inju-
riously affect her credibility as a witness without attack-
ing the same in the manner provided by statute, and the re-
quested instruction is at best an elaborate and ingenious
argument framed to emphasize that effect.   The impeach-
ment of a witness is a right to which a party may resort on
all proper occasions, but it is the right of the witness and of
the party by whom he is called to insist that such impeach-
ment be accomplished, if at all, in accordance with the
well-defined rule.

9. DAMAGES: in-
juries to
person: per-
manent and
continuing in-
juries con-
trasted: in-
structions.

The defendant also requested an in-
struction that the evidence does not war-
rant a verdict on the theory that plaintiff's
injuries are permanent, and error is as-
signed upon the failure to so charge the ju-
ry.   It is sufficient to say, in this regard, that the court
did not submit to the jury the question of permanent in-
jury.   They were told that, if they found for plaintiff, and
further found that her pain and suffering caused by the
defendant's negligence were reasonably certain to continue
in the future, then she would be entitled to compensation
therefor.   The testimony in the case clearly justified this
instruction, and the refusal of the defendant's request was
proper.

10. TRIAL: in-
structions:
applicability
to pleadings
and evidence.

Defendant requested and the court re-
fused a still further instruction as follows:
"Some evidence has been introduced
tending to show that a surgical operation
might relieve plaintiff. of some of the mat-
ters wherein she claims to be suffering as the result of the
alleged accident.   There is, however, no evidence of what
the expense of such operation would be, and the jury will
accordingly not take such matter into consideration in

event you find for the plaintiff, or allow her anything therefor."

The refusal of this request was not erroneous. Its effect would have been simply to create the appearance of withdrawing from the jury an issue or subject nowhere suggested by the record. No such element of damage was pleaded, and no testimony bearing thereon had been introduced. Even when instructions are strictly limited to questions in issue, it is not always easy for the trial court to cover them all fully and preserve the brevity, clearness and directness which are essential to a proper statement of the case, and it is neither proper nor desirable that its charge to the jury be confused with discursive directions as to matters not in dispute.

III. In conclusion, objection is made to the award of damages as being excessive in amount. In support of this contention, it is said that the damages so given are for pain and suffering alone, leaving the defendant still liable to another action in favor of plaintiff's husband for her loss of time and for expenses incurred. But counsel is not quite correct in this assertion. The petition sets up a claim not merely for pain and suffering, but for actual physical injuries of which the alleged pain and suffering were the accompaniments, and if the evidence in her behalf was believed by the jury, as it evidently was, it was sufficient to justify the finding that she sustained serious injury to her genito-urinary organs, resulting in an impaired state of health and the probable necessity of subjection to surgical operation. The compensation or damages which may be awarded for physical injury, impaired health and strength, bodily and mental pain and anguish, is not, and in the nature of things cannot be, the subject of any definite mathematical rule of statement or measurement. Indeed, "compensation" is a somewhat misleading term in this connec-

11. TRIAL: verdict: $2,500: excessiveness.

tion, and is made use of only because we have no other word more nearly expressing the thought of the law, which permits recovery for an imponderable and intangible thing for which there is no equivalent in terms of money. If the right to a recovery of this nature be established, the jury is charged with the duty of assessing such damages as, in its fair and impartial discretion, is the nearest practical approximation to what is called compensation in the business world. When it has done so, then, in the absence of other sufficient ground for ordering a new trial, the court will not interfere with the verdict, unless the amount assessed is so extraordinary as to clearly indicate that the jury was influenced by passion or prejudice, or by a radical misconception of its duty in the premises. We are not prepared to say that such is the showing in this case.

We find no reversible error in the record, and the judgment of the district court is therefore—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.