Argued September 28, affirmed October 25, reconsideration denied
December 1, petition for review denied December 28, 1976

# STATE OF OREGON, *Respondent,*
## *v.*
# KERMIT ROOSEVELT FANCHER, *Appellant.*

555 P2d 792

*R. Ladd Lonnquist,* Portland, argued the cause for appellant. With him on the brief were Pozzi, Wilson & Atchison, and Dan O'Leary, Portland.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

On December 17, 1975 the Multnomah County Grand Jury returned an indictment charging defendant with "conspiring" to commit theft in the first degree[1] by allegedly agreeing with six other people to steal money from parking meters owned by the City of Portland. Following a trial before a jury at which three of defendant's alleged coconspirators testified on behalf of the state, defendant was found guilty. On appeal defendant's single assignment of error is based upon the trial court's denial of his motion to exclude "evidence of alleged crimes occurring outside the period set forth in the indictment."

The indictment returned in this case specifically alleged that "with the intent that conduct * * * punishable as a felony be performed" defendant had, between September 8, 1975 and December 11, 1975, entered into an agreement with his coconspirators to carry out a scheme designed to result in the theft of "lawful currency of a total amount exceeding two hundred dollars." At trial the state produced a substantial amount of evidence tending to prove that during the three month period cited in the indictment defendant, a parking meter repairman employed by the City of Portland for nearly twenty years, and other city employees had unlawfully removed coins from parking meters and passed those coins to other individuals who exchanged them for currency in various banks throughout the metropolitan area. Taken alone, that evidence would have been sufficient to support a conviction, as the existence of the "agreement" and requisite "intent" essential to a "conspiracy" may be established by circumstantial evidence, i.e., may be

---

[1] ORS 161.450(1) provides:

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

inferred from the acts or conduct of the alleged coconspirators.[2]

Defendant argues that reversal is nonetheless necessary here because the jury was, over his objection, also permitted to take into consideration "irrelevant" evidence of "alleged crimes occurring outside the period set forth in the indictment," the admission of which served to deprive him of his "constitutional right to due process." In support of this argument defendant refers us to the well established rule prohibiting the introduction of evidence of criminal activity independent of and unrelated to that charged where its only relevancy is that it tends to show the defendant to be an individual prone to criminal conduct.[3]

One of the alleged coconspirators appearing on behalf of the state did in fact testify that the defendant had initially approached her about "making some extra money" in December of 1974; she also acknowledged that as a consequence of the December conversation, she began "exchanging coins" delivered to her by defendant sometime in January or February of 1975, and that she thereafter worked the "coin exchange" for defendant on a regular basis up to the date of her arrest on December 11, 1975.[4] Defendant contends that to the extent the witness's testimony related to her conversation with him in December of 1974 and to her activities as a "coin exchanger" prior to September 8, 1975, it was evidence of a crime other than that charged in the indictment, irrelevant to the

---

[2] *State v. Gagnon,* 2 Or App 261, 465 P2d 737, Sup Ct *review denied* (1970); *State v. Brewer,* 12 Or App 105, 504 P2d 1067, *affirmed,* 267 Or 346, 517 P2d 264 (1973); *State v. Reed,* 15 Or App 593, 517 P2d 318 (1973).

[3] *State v. Ellis,* 243 Or 190, 412 P2d 518 (1966); *State v. Long,* 195 Or 81, 244 P2d 1033 (1952); State v. Bailey, 179 Or 163, 170 P2d 355 (1946).

[4] More specifically, the witness testified that she had made exchanges on between "20 and 50" different occasions between January and December of 1975, including three different exchanges between December 1, 1975 and December 11, 1975. The witness also indicated that the currency ultimately obtained was generally divided in a "six-way split", her share being one-sixth of the total exchanged in any single transaction.

crime charged, highly prejudicial to his case and thus inadmissible.

■■ Defendant's analysis is, however, flawed; under the facts of this case, the "rule" he relies upon is inapplicable for the reason that the testimony to which he objected actually constituted evidence of the very crime charged in the indictment rather than any additional and unrelated offense. It is the agreement to commit an unlawful act or acts which itself constitutes the action element of the crime of conspiracy; whether the object of a single agreement is the commission of one or many criminal acts, it is the agreement which constitutes the offense in either case. In effect, therefore, a "conspiracy" is a "continuing offense"; once two or more parties have entered into the proscribed agreement, the "crime" continues until it is abandoned or its object fulfilled. Thus, even when a "conspiracy"—i.e., the agreement itself—contemplates several crimes and extends over a prolonged period of time, it cannot be broken down into component subagreements or divided into separate units based upon distinct time intervals for the purpose of multiple prosecutions or punishments.[5]

■ As noted above the testimony objected to in this case tended to prove that defendant and the witness entered into an agreement to commit theft in December of 1974 and as a consequence of that agreement, embarked upon an uninterrupted course of illegal conduct which extended up to the date of their arrest in December of 1975. That testimony was, therefore, circumstantial evidence of the same crime charged in the indictment; it was probative of but one "agreement" and, therefore, but one violation of ORS 161.450.[6]

---

[5] *Braverman v. United States,* 317 US 49, 63 S Ct 99, 87 L Ed 23 (1942); *United States v. Campanale,* 518 F2d 352 (9th Cir 1975); *United States v. Adcock,* 487 F2d 637 (6th Cir 1973); *United States v. Noah,* 475 F2d 688 (9th Cir 1973).

[6] Even assuming, for purposes of argument, that the testimony

By framing the indictment as it did, the state imposed upon itself the burden of proving beyond a reasonable doubt that the defendant had committed the crime of conspiracy by agreeing with one or more other parties, between September 8, 1975 and December 11, 1975, to commit one or more acts of theft. Evidence tending to show that the "conspiracy" charged was initially conceived prior to September 8 was neither irrelevant nor inadmissible.

Affirmed.

---

objected to constituted evidence of "other crimes," we would nonetheless be inclined to hold its admission in this case to have been proper. The general rule cited and relied upon by defendant does not, in fact, apply where the evidence of "other crimes" is substantially relevant for some purpose other than to show a probability that a defendant is a man of criminal character. Evidence of criminal acts not charged may, for example, be offered and received in order to show the context within which the crime charged was allegedly committed, or to establish the existence of a continuing plan or scheme of which the crime charged was a part in order to establish motive, identity or intention where any of those issues is in dispute. *See generally,* McCormick, Evidence 447, § 190 (2d ed E. Cleary 1972); *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975). The state has, in fact referred us to a line of federal cases involving defendants charged with conspiracy in which evidence of criminal activity distinct from that charged was held to have been properly admitted where it was relevant to defendant's intent, knowledge or motive, or to the existence of a plan or scheme of which the crime charged was but a part. *See United States v. Numez,* 483 F2d 453 (9th Cir 1973); *United States v. Jones,* 425 F2d 1048 (9th Cir) *cert denied,* 400 US 823 (1970); *DeCarlo v. United States,* 422 F2d 237 (9th Cir 1970); *United States v. Jiminez-Robles,* 415 F2d 308 (9th Cir 1969). *See generally,* Annotation, 20 ALR, Fed 125, 136-146 (1974).