MALETIS, INC.,
an Oregon corporation,
Chris Maletis, Jr., and Cleo Maletis, individually,
*Appellants,*

*v.*

SCHMITT FORGE, INC.,
an Oregon corporation,
*Respondent.*

(9106-03916; CA A76156)

870 P2d 865

Christopher James argued the cause for appellants. With him on the briefs were Arno H. Denecke and James, Denecke & Harris.

Michael H. Simon argued the cause for respondent. With him on the brief were C. Marie Eckert and Perkins Coie.

Before Deits, Presiding Judge, and Riggs and Leeson, Judges.

RIGGS, J.

## RIGGS, J.

Plaintiffs brought an action for damages stemming from alleged interference with their use of an easement. Defendant counterclaimed for a declaratory judgment that the easement was terminated. Plaintiffs appeal from a judgment of dismissal following a directed verdict and a jury verdict, both for defendant. We affirm.

The parties own adjacent industrial sites in northwest Portland. In 1956, defendant's predecessor in interest granted plaintiffs' predecessor in interest an easement and perpetual right-of-way over a rail spur connecting a warehouse to the rail line that runs along N.W. Nicolai. Plaintiffs were aware of the rail spur easement when they purchased their site, the dominant estate, in 1973. They used the rail spur until 1979. In 1988, they moved their operations from the northwest Portland site to Swan Island. In December, 1990, plaintiffs entered into an earnest money agreement to sell the northwest Portland site to a chemical distributor. Plaintiffs did not know that the rail spur easement was terminable. In January, 1991, the chemical distributor learned from the title report that the easement had a termination clause. When the chemical distributor contacted defendant, defendant took the position that the easement was terminated through nonuse. The chemical distributor declined to buy the site. In February, 1991, defendant sent plaintiffs a letter stating that "the easement has terminated by operation of law although a reconveyance was not entered."

Plaintiffs brought an action to recover damages for defendant's interference with the easement and the sale of the northwest Portland site, breach of contract, and slander of title. Defendants counterclaimed for a judgment declaring that the easement had been terminated. Plaintiffs answered that the counterclaim was barred by waiver, estoppel and laches. The case was tried to a jury. Defendant moved for a directed verdict, which the trial court granted. Pursuant to ORCP 63B, plaintiffs requested that the case be submitted to the jury. The jury returned a verdict for defendant.

■ Plaintiffs ask us to reverse the judgment because it rests on an erroneous directed verdict and a jury verdict

which must be overturned due to improper instructions. We first consider whether the directed verdict was properly granted. The directed verdict was premised on the idea that the easement was subject to a special limitation, *i.e.*, that it terminated automatically once the condition was triggered. Plaintiffs concede that the condition was triggered but assert that the easement was subject to a condition subsequent and could not be terminated without notice.[1]

The easement provides:

"If the easement hereby granted be not used for a consecutive period of two or more years * * * then this easement shall terminate and the title to the property shall vest free and clear in the grantor, his heirs and assigns."

In *City of Klamath Falls v. Flitcraft*, 7 Or App 330, 334, 490 P2d 515 (1971), *rev den* (1972), we said that the "magic" words "so long as" are necessary to create a special limitation on an estate. Because the "magic" words are missing, we agree with plaintiffs that the trial court mischaracterized the easement as one subject to a special limitation. It was subject to a condition subsequent and could not be terminated except by re-entry or notice.

■    Although we agree with plaintiffs that the easement was subject to a condition subsequent, we also agree with defendant that, even if the easement did not terminate automatically, it terminated when defendant sent a letter stating that the easement was extinguished. In order to terminate an estate on condition subsequent, the grantor must "manifest an intention to terminate by giving notice or by the exercise of his right of re-entry." *Fremont Lbr. Co. v. Starrell Pet. Co., supra* n 1, 228 Or at 186. Plaintiffs argue that the letter, which read: "the easement has been terminated by operation of law," did not manifest an *intention* to terminate. We decline plaintiffs' invitation to quibble. We hold that, in this context, the letter served as sufficient notice of intent to terminate.

■    Plaintiffs next argue that laches, waiver and estoppel prevent defendant from terminating the easement. The trial court held that

---

[1] For an Oregon case defining an estate on special limitation (also known as a fee simple determinable) and an estate on condition subsequent, *see Fremont Lbr. Co. v. Starrell Pet. Co.*, 228 Or 180, 186, 364 P2d 773 (1961).

> "[t]he doctrine of equitable estoppel and acquiescence [*i.e.*, waiver] and laches plus attendant reliance to the plaintiff's detriment has not been established by clear and convincing evidence, which is the requirement."

Plaintiffs point out that the trial court used an incorrect standard of proof. The correct standard of proof is a preponderance of the evidence. ORS 10.095(5). However, because we review *de novo*, under ORS 19.125(3), the trial court's use of the wrong standard of proof makes no difference.

■　We now consider whether plaintiffs have shown, by a preponderance of the evidence, that defendant was equitably estopped from terminating the easement.

> " 'Estoppel' is an equitable principal that precludes someone from exercising a right to another's detriment if the right holder, through words or conduct, has led the other to believe that the right would not be exercised." *Daly v. Fitch,* 70 Or App 18, 21 n 2, 687 P2d 1124 (1984).

Equitable estoppel does not apply here. Plaintiffs did not know about the termination clause. Therefore, they could not be misled by defendant's delay into believing that defendant would not exercise its rights under the clause. For a similar reason, waiver is also inapplicable.

> "Where there is no intention to waive, there is no waiver, unless the conduct of the alleged waiver is such as to have misled the waivee to his prejudice." *Mitchell v. Hughes,* 80 Or 574, 580, 157 P 965 (1916).

Plaintiffs have not shown that defendant intended to waive the termination clause or that plaintiffs were misled by defendant's inaction.

■■　Plaintiffs also argue that the trial court incorrectly placed the burden of proving laches on them. They argue that defendant had the burden of proving the absence of laches. We cannot determine, on this record, who had the burden.[2]

---

[2] The burden of proving laches would be on plaintiff if defendant's counterclaim had been brought within the analogous statute of limitations. However, if the counterclaim was brought outside the analogous statute of limitations, defendant would need to prove the absence of laches. *Albino v. Albino,* 279 Or 537, 553, 568 P2d 1344 (1977). In this case, the analogous statute of limitations was 10 years. ORS 12.050. However, because plaintiffs do not provide the specific date in 1981 when the termination clause was triggered, we cannot determine whether the counterclaim filed in 1991 fell inside or outside the 10-year period.

The placement of the burden is immaterial here, because plaintiffs' own evidence negates laches. Laches requires that the delay substantially prejudice plaintiffs. The prejudice may take the form of a disadvantageous change in position, or a loss of witnesses or documents. *Rise v. Steckel*, 59 Or App 675, 685, 652 P2d 364, *rev den* 294 Or 212 (1982). Plaintiffs could not have changed their position in reliance on defendant's delay in enforcing the termination clause, because plaintiffs did not know that the termination clause existed. There is otherwise no evidence that the plaintiffs lost witnesses or documents as a result of the delay. Laches does not apply.

Because the directed verdict was properly granted, it is unnecessary to consider the correctness of the jury instructions.

Affirmed.